

**Office of the Attorney General**
**State of Texas**

**DAN MORALES**
ATTORNEY GENERAL

February 6, 1992

Honorable George Pierce
Chairman
Committee on Urban Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-88

Re: Whether article 601f, V.T.C.S., pertaining to payments for goods and services contracted for by state agencies or political subdivisions, applies to construction contracts (RQ-256)

Dear Representative Pierce:

You have submitted a request on behalf of the City of San Antonio regarding payment of construction contracts. The materials you have submitted to this office suggest that minority- and women-owned construction companies in the San Antonio area have expressed concern that their economic success has been impaired due to lack of prompt payment by construction contractors to subcontractors. With this concern in mind, you ask whether article 601f, V.T.C.S., a statute pertaining to the payment of goods and services contracted for by state agencies and political subdivisions, applies to construction contracts. For the reasons stated below, we conclude that it does.

Article 601f establishes time limitations within which state agencies and political subdivisions must pay vendors for goods and services, and vendors who receive payment from such governmental entities must pay their subcontractors.[1] For example, a political subdivision must generally pay a vendor not later than the 30th calendar day after the day on which it receives the goods or services, or the date it receives the invoice for the goods or services, whichever is later. V.T.C.S.

---

[1]Article 601f defines a "state agency" to include a board, commission or other agency of the executive branch, as well as the legislature or a legislative agency, and certain state courts and judicial agencies. V.T.C.S. art. 601f, § 1(1). It defines "political subdivision" to mean a county, an incorporated city or town, a public school district, or a special purpose district or authority. *Id.* § 1(2). For purposes of article 601f, the term "governmental entity" embraces both state agencies and political subdivisions. *See id.* § 1(3).

art. 601f, § 2(b).[2]  Article 601f imposes interest at the rate of one percent per month, which shall be paid automatically as payments become overdue. *Id.* §§ 2(c), 5. A vendor is required to pay subcontractors not later than the 10th calendar day after the day on which the vendor receives payment from the governmental entity, and a vendor who does not make timely payments to subcontractors must also pay interest at the rate of one percent per month. *Id.* §§ 4(a), 5. A subcontractor must in turn pay his or her suppliers no later than the 10th calendar day after the day on which the subcontractor receives payment, or pay interest at the same rate. *Id.* §§ 4(b), 5.

Section 7 of article 601f sets forth certain exemptions to the above requirements. In particular, section 7(a) provides that article 601f does not apply when the terms of a contract specify other times and methods of payment or methods of resolving disputes or interest owed on delinquent payments, when there is a bona fide dispute between a vendor and a subcontractor or a subcontractor and a supplier concerning goods or services which causes payment to be late, when the terms of a federal contract, grant, law, or regulation prevent a governmental entity from making timely payment with federal funds, or when the invoice has not been mailed to the addressee in strict accordance with instructions on the purchase order. In addition, section 7(b) provides that article 601f does not amend article 5160, V.T.C.S., which deals with contractors' performance and payment bonds.

It is not clear from the face of article 601f whether it applies to construction contracts. First, a vendor is defined as "a person, corporation, association, partnership, or other legal entity that supplies *goods and/or services* to a governmental entity." *Id.* § 1(6) (emphasis added). Other provisions require governmental entities to pay upon receipt of the invoice for "supplies, materials, equipment or services." *Id.* §§ 2, 3. The terms "goods" and "services" are not defined, however, and thus it is not clear whether those terms embrace construction work.[3] Given that the terms "goods" and "services" are not defined in article 601f, we turn to the legislative history for guidance.

---

[2]A political subdivision must pay for goods and services provided pursuant to a contract executed between July 1, 1986, the statute's effective date, and September 1, 1987, within 45 days. *Id.* § 2(a). Similar requirements for state agencies are set forth in section 3 of article 601f.

[3]The comptroller has issued regulations pursuant to article 601f. *See* 34 T.A.C. § 5.55. These regulations shed no light on the question at issue here. The General Services Commission (the "commission"), however, has interpreted article 601f to apply to construction contracts. Section 5.26 of article 601b, V.T.C.S., requires the commission to adopt uniform general conditions to be incorporated into all state building construction contracts. These uniform general conditions state that "[t]he

Article 601f was enacted by the 69th Legislature as House Bill 275.[4]  It is abundantly clear from the legislative history of House Bill 275 that the legislature intended for it to apply to construction contracts.  The witnesses who testified at hearings on House Bill 275 before the House Committee on Business and Commerce included construction contractors and subcontractors.  Hearings on H.B. 275 Before the House Comm. on Bus. & Com., 69th Leg. (February 18, 1985).  It is clear from their testimony that House Bill 275 was intended to apply to construction contracts.  *Id.*  In addition, a house study group bill analysis states that the legislation "will also help minimize the construction-project delays that result from disputes between contractor and subcontractor, by encouraging contractors to pay subcontractors promptly."  House Study Group, Bill Analysis, H.B. 275, 69th Leg. (1985) at 2.  The analysis also notes that the bill's opponents contended that many state agencies actually pay in less than 30 days, and the new deadlines "would look like a mandate for delay at the expense of vendors, *especially construction contractors*, who generally borrow heavily and end up owing their lenders a lot more interest if they do not get paid on time."  *Id.* at 3 (emphasis added).  Furthermore, when House Bill 275 was considered by a senate committee, Representative Jackson, the author of the bill, was asked how it would affect transactions between vendors and subcontractors.  He replied, "It does reach those private transactions only on public projects where there is a subcontractor for public construction projects.  It does not go into the purely private transactions."  Hearings on H.B. 275 Before the Senate Comm. on State Affairs, 69th Leg. (April 3, 1985).

Based on the legislative history, we conclude that the legislature intended article 601f, V.T.C.S., to apply to payments by governmental entities to construction contractors under construction contracts.  As a result, we conclude that article 601f applies to payments by construction contractors to construction subcontractors, and by construction subcontractors to suppliers, for work on such public construction projects.  Of course, a particular construction contract may be exempt from article 601f if it falls within one of the exemptions set forth in section 7.

---

(footnote continued)

provisions of Article 601f of Texas Civil Statutes . . . apply to payments under this Contract." *See* Uniform General Conditions art. 7.2.1.1 (copies available through the commission).

[4]Acts 1985, 69th Leg., ch. 82, at 257 (eff. July 1, 1986); *see also* Acts 1985, 69th Leg., ch. 614, § 2, at 2293 (amending section 7(a) to exempt contracts which specify other methods of payment or methods of resolving disputes or interest owed on delinquent payments).

## SUMMARY

Article 601f, V.T.C.S., a statute pertaining to the payment of goods and services contracted for by state agencies and political subdivisions, applies to construction contracts.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General